UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R.B., <br><br> Plaintiff, <br><br> v. <br><br> LISA HOLLIBAUGH, et al., <br><br> Defendants. | CIVIL ACTION NO. 1:16-CV-01075 <br><br> ( KANE, J.) <br> (MEHALCHICK, M.J.) |

**MEMORANDUM**

This is a civil rights action in which Plaintiff R.B., appearing through counsel, asserts claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and state law against the Pennsylvania Department of Corrections ("DOC"), several DOC employees at SCI-Smithfield and SCI-Waymart (collectively, the "DOC Defendants"), and independent medical care providers at SCI-Smithfield. (Doc. 1). Now pending before the Court are three motions to compel discovery against nonparties, filed by Plaintiff in December of 2016. (Doc. 37; Doc. 39; Doc. 41). Plaintiff additionally requests contempt sanctions in the form of costs and fees associated with the filing of these motions. In the first motion, Plaintiff seeks the following materials from SCI-Waymart Superintendent Jack Sommers: the duty rosters from the time of his alleged assault in September of 2014 at the hands of several DOC Defendants; the incident report from that assault; and the DOC-issued photo identification of Corrections Officer Toy. (Doc. 37, at 2). In the second motion, Plaintiff seeks the DOC's records of his medical and mental health from the records custodian at SCI-Mahanoy. (Doc. 39, at 1; Doc. 39-1, at 1). In the final motion, Plaintiff requests SCI-Smithfield Superintendent Eric Tice to produce the duty rosters from the time of his alleged sexual assault

in June of 2014 and the reports produced as a result of the DOC's investigation into the sexual assault, including any surveillance video.[1] (Doc. 41, at 1; Doc. 41-1, at 1). Counsel for the DOC assumed responsibility for the handling of the subpoenas and corresponding motions to compel because all three subpoenas were served on DOC employees, and responded to the motions by asserting several reasons why the DOC employees should not be ordered to produce the materials requested by Plaintiff. (Doc. 43; Doc. 45; Doc. 46). The motions to compel have been fully briefed and are now ripe for disposition. For the reasons that follow, the Court will grant the motions in part and deny them in part.

## I. STANDARD OF REVIEW

The general scope of discovery is outlined by Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.
>
> Fed. R. Civ. P. 26(b)(1).

Rule 26 establishes a liberal discovery policy. *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 226-27 (M.D. Pa. 2014); *Great West Life Assurance Co. v. Levithan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994). Issues relating to the scope of discovery permitted under Rule 26 rest in the sound discretion of the court. *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987).

---

[1] Plaintiff initially misidentified the Superintendent of SCI-Smithfield as Kevin Kauffman, as opposed to Eric Tice, but later corrected that mistake. (Doc. 41-1, at 1; Doc. 49, at 2 n.1, 9 n.3). The DOC did not object to the naming error, and thus the Court does not consider it here. (Doc. 46; Doc. 49, at 9 n.3).

Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. *Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). "Although the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits." *Banks v. Beard*, 2013 WL 3773837, at *2 (M.D. Pa. July 17, 2013) (citing *Stabilus v. Haynsworth, Baldwin, Johnson & Greaves, P.A.*, 144 F.R.D. 258, 265 (E.D. Pa. 1992)). "Discovery requests may be curtailed to protect a person from whom discovery is sought from 'annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 238 (E.D. Pa. 2014) (quoting Fed. R. Civ. P. 26(c)(1)).

Here, Plaintiff submits motions to compel discovery materials from nonparties pursuant to Rule 45. Rule 45 sets forth the procedure that a party must follow to request the production of "designated documents, electronically stored information, or tangible things in [the] possession, custody, or control" of a nonparty.[2] Fed. R. Civ. P. 45(a)(1)(A)(iii). "After being served with a subpoena duces tecum, a nonparty may object to producing any or all of the requested information by serving a written objection on the party or person designated in the subpoena . . . within fourteen days after the subpoena is served . . . ."[3] *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. at 238 (citing Fed. R. Civ. P. 45(d)(2)(B)). As an alternative to

---

[2] A party may also use a subpoena under Rule 45 to command a nonparty to attend a deposition or permit the inspection of premises. Fed. R. Civ. P. 45(a)(1)(A)(iii). However, Plaintiff's requests in the motions now before the Court are limited to the production of documents and other tangible items.

[3] The objection need not be filed with the court. *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. at 238.

serving objections on the subpoenaing party, a nonparty may file a timely motion for a court to quash the subpoena pursuant to Rule 45(d)(3).

"A non-party's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objection . . . has been waived." *Wade v. City of Fruitland*, 287 F.R.D. 638, 641 (D. Idaho 2013) (citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998); *Wang v. Hsu*, 919 F.2d 130, 131 (10th Cir. 1990)); *see also Celanese Corp. v. E. I. duPont de Nemours & Co.*, 58 F.R.D. 606, 609 (D. Del. 1973) ("[A] party who fails to abide by the procedural rules governing litigation does so at his own risk and peril."). However, a court may consider untimely objections in unusual circumstances or upon a showing of good cause. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) ("In unusual circumstances and for good cause, however, the failure to act timely will not bar consideration of objections."). Examples of situations where courts have found that unusual circumstances warrant consideration of untimely objections include "where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena." *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136–37 (S.D. Ohio 1999).

II. DISCUSSION

    A. WAIVER OF OBJECTIONS

Here, none of the subpoenaed DOC officials filed a timely motion to quash. Furthermore, Plaintiff alleges that the subpoenaed DOC officials each waived their right to object to the subpoenas by failing to serve timely written objections. (Doc. 38, at 3; Doc. 40, at 3-4; Doc. 42, at 3-4). Indeed, the first subpoena was served on Superintendent Sommers on

October 11, 2016, but counsel for the DOC did not object to the subpoena within fourteen days or produce the requested materials within the thirty-day period specified in the subpoena. (Doc. 37-1, at 2; Doc. 38, at 3). Likewise, the second and third subpoenas were both served on November 21, 2016, but again counsel for the DOC did not make any no objections or produce any records within the respective allotted timeframes. (Doc. 39-1, at 2; Doc. 40, at 3-4; Doc. 41-1, at 2; Doc. 42, at 3-4). The Court therefore finds that the subpoenaed DOC officials failed to comply with Rule 45's procedural requirements.

Despite their failure to comply with Rule 45's time requirements, the Court finds that unusual circumstances warrant excusing the subpoenaed DOC officials' untimeliness. Namely, counsel for the DOC exchanged frequent correspondence with Plaintiff's counsel from shortly after the time the first subpoena was served in an effort to negotiate an agreement as to the extent of the DOC officials' compliance with the document requests. (Doc. 37-1, at 5-18; Doc. 40-1, at 5-54); *see also Am. Elec. Power Co.*, 191 F.R.D. at 136–37 (noting that courts may find unusual circumstances exist where counsel for the witness contacted counsel for the subpoenaing party to discuss the witness' compliance without formally submitting objections to the subpoena). For example, counsel for the DOC provided Plaintiff's counsel with photographs of Corrections Officers Strasburger and Toy believing that they might be a sufficient substitute for the documents requested in the first subpoena. (Doc. 37-1, at 8-18; Doc. 43, at 3-4). Additionally, the DOC officials aver that they are willing to produce the materials requested in the second and third subpoenas, but they have been unable to agree with Plaintiff's counsel on a reasonable confidentiality stipulation. (Doc. 45, at 3-4; Doc. 46, at 3). In light of these communications between counsel for the DOC and Plaintiff's counsel, the Court finds that the DOC officials have not waived their objections to Plaintiff's subpoenas, and so the Court will proceed to consider these objections on their merits. *See, e.g.*, *Celanese Corp. v. E. I.*

*duPont de Nemours & Co.*, 58 F.R.D. 606, 610 (D. Del. 1973) (holding that nonparty's decision to negotiate response to a subpoena instead of serving timely objections was not the wisest course of action but nonetheless should not bar consideration of the nonparty's arguments); *cf. Wade v. City of Fruitland*, 287 F.R.D. 638, 641 (D. Idaho 2013) (holding that court has discretion to consider nonparty's arguments under Rule 45 even where there is not good cause to excuse the nonparty's untimeliness).

B. OBJECTIONS ON THE MERITS

Counsel for the DOC presents three arguments as to why the subpoenaed DOC officials should not be compelled to produce the materials requested in the three subpoenas: (1) Plaintiff's counsel agreed to postpone production of the documents named in the first subpoena until Plaintiff had the opportunity to identify Corrections Officer "Stoney" from the two photos the DOC provided, but then reneged on this agreement; (2) the DOC should not be compelled to produce a duty roster and incident report until Plaintiff's counsel agrees to sign a reasonable confidentiality stipulation; and (3) the subpoenaed DOC officials have no obligation to produce these documents until they are given a check for their witness fees and mileage. (Doc. 43, at 3-4; Doc. 45, at 3-6; Doc. 46, at 3-5). The Court evaluates each of these arguments in turn.

**1. Supposed agreement concerning the first subpoena**

Counsel for the DOC first argues that it reached an agreement with Plaintiff's counsel that postponed Superintendent Sommers' obligation to comply with the first subpoena. (Doc. 43, at 3-4). Specifically, the DOC provided Plaintiff's counsel with photographs of Corrections Officers Strasburger and Toy, in order to give Plaintiff the opportunity to determine which one was Corrections Officer "Stoney." (Doc. 37-1, at 8-11; Doc. 43, at 3). Plaintiff's counsel indicated to counsel for the DOC that "[t]here might be an easy solution," and that "[i]f [Plaintiff] agrees that Stra[sburger] is Stoney, and Toy was not involved, then [Plaintiff's

counsel] can cancel the request for documents." (Doc. 37-1, at 8). Plaintiff ultimately picked out one of the two corrections officers from the photos as "Stoney," but Plaintiff's counsel refuses to divulge which photo her client chose. (Doc. 37-1, at 18; Doc. 43, at 3). Counsel for the DOC now argues that it should not be compelled to comply with the subpoena until Plaintiff's counsel "uphold[s] her side of the agreement," particularly because the stated purpose of this discovery request—to determine whether Plaintiff needed to amend the caption of the complaint to include Corrections Officer Toy as an additional Defendant—would be vitiated if Corrections Officers "Stoney" and Strasburger were one and the same. (Doc. 43, at 3).

The Court is unpersuaded by counsel for the DOC's argument that Superintendent Sommers should not be required to produce the materials requested in the first subpoena until Plaintiff's counsel reveals what photo her client chose. Counsel for Plaintiff indicated that she might be willing to cancel the document requests depending on the identification made by her client, but no formal agreement to this effect was ever reached. Indeed, the email communications between counsel for the DOC and Plaintiff's counsel reveal that counsel for the DOC explicitly asked whether Superintendent Sommers could disregard the rest of the subpoena if it provided the two photos, to which Plaintiff's counsel responded "no." (Doc. 37-1, at 9-10). Moreover, it remains unclear whether Plaintiff actually identified Strasburger as "Stoney," given that the two photos were unlabeled and Plaintiff's counsel never revealed which photo her client chose. Accordingly, the documents Plaintiff requested in the first subpoena could yet prove to be important in determining whether Corrections Officer Toy was involved in any of the alleged wrongdoing. For these reasons, Superintendent Sommers must comply with the first subpoena.

   2. **Confidentiality stipulation**

Counsel for the DOC next argues that the DOC officials should not be required to comply with the subpoenas because Plaintiff's counsel refuses to sign a reasonable confidentiality stipulation. (Doc. 43, at 4; Doc. 45, at 3-4; Doc. 46, at 3). Plaintiff's counsel contends that the confidentiality stipulation proposed by the DOC only pertains to Plaintiff's medical and mental health records, and thus has no application to Plaintiff's first and third subpoenas. (Doc. 44, at 6-7; Doc. 49, at 5-6). However, the plain language of the proposed confidentiality stipulation indicates otherwise, as it contemplates review of "certain confidential records in the possession of the D[OC], including inmate mental health records, counselor's notes, certain policies and/or procedures manuals, and investigative reports and summaries, pursuant to discovery in the abovementioned litigation . . . ." (Doc 42-1, at 9). Furthermore, in the email accompanying the proposed confidentiality stipulation, counsel for the DOC told Plaintiff's counsel that "[i]t is standard to require this Confidentiality Stipulation before producing confidential Department procedures manuals and other documents." (Doc 42-1, at 8). Accordingly, the Court finds that the proposed confidentiality stipulation was intended to apply to the materials requested in all three subpoenas.

Plaintiff's counsel also complains that it is unprecedented for the DOC to require her to sign a confidentiality stipulation before producing subpoenaed materials. (Doc. 49, at 6 (noting that Plaintiff's counsel litigated other cases with the DOC where the production of similar discovery materials was not preconditioned on signing a stipulation)). However, courts within the Third Circuit routinely hold that institutional security and safety concerns permit corrections officials to condition the production of documents on entry into a reasonable confidentiality agreement. *See, e.g., Johnson v. Wetzel*, No. 1:16-CV-863, 2016 WL 4211719, at *1 (M.D. Pa. Aug. 10, 2016) ("[D]efendants' proposed confidentiality order strikes an appropriate

balance between the need to produce uniquely probative discovery to counsel for Johnson while mitigating institutional security and individual safety concerns attending broader disclosure . . . ."); *United States v. Con-Ui*, No. 3:13-CR-123, 2016 WL 4140520, at *9 (M.D. Pa. Aug. 4, 2016) ("The parties are to agree upon a confidentiality agreement/protective order protecting the privacy of the BOP corrections officers and employees and present it to the court for approval. Once approved, the evaluations are to be produced."); *Mincy v. Chmielewski*, No. CIVA 1:05CV0292, 2006 WL 3042968, at *2 (M.D. Pa. Oct. 25, 2006) ("Defendants will be required to release the pertinent mental health records, provided the precondition of execution of a confidentiality agreement is met."). The Court finds that those same institutional security and safety concerns are implicated here, and thus deems counsel for the DOC's request that Plaintiff's counsel sign a reasonable confidentiality stipulation before receiving the requested discovery materials to be appropriate.[4]

---

[4] Although Plaintiff argues that the "DOC cannot demand a confidentiality stipulation from the [P]laintiff as a condition of giving him access to his medical records," Plaintiff does not cite any caselaw for the proposition that such a stipulation would violate Plaintiff's rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). (Doc. 48, at 7). Moreover, courts within the Third Circuit routinely find that the DOC's release of a plaintiff's own medical and mental health information may be conditioned on the execution of a confidentiality agreement, given that the DOC has valid penological concerns that release of these records to current or former inmates could expose treating staff to retaliation or otherwise compromise the treatment process. *See Victor v. Varano*, No. 3:11-CV-891, 2012 WL 1514845, at *8 (M.D. Pa. May 1, 2012); *Williams v. Klem*, No. CIV 3:07-1044, 2010 WL 3703801, at *2 (M.D. Pa. Sept. 15, 2010); *Daniels v. Kelchner*, No. CIV 1CV-05-1601, 2007 WL 2068631, at *4 (M.D. Pa. July 17, 2007); *Mincy*, 2006 WL 3042968, at *2. To the extent that Plaintiff's counsel objects to specific provisions in the authorization form and confidentiality stipulation proposed by the DOC, however, she may certainly negotiate over the language employed. For instance, Plaintiff's counsel takes issue with the provision in the proposed authorization form that states that Plaintiff must "explicitly waive any and all rights . . . to the confidential maintenance of these records, including any such rights that exist under . . . federal statutory and/or constitutional law . . . ." (Doc 42-1, at 2-3; Doc. 48, at 4). Counsel for Plaintiff's objection to this terminology may be well-founded, as the DOC's proposed waiver appears to encompass

*(footnote continued on next page)*

**3. Witness fee and mileage**

As a final argument, counsel for the DOC asserts that Plaintiff is not entitled to the requested documents until each of the subpoenaed DOC officials are provided compensation for their witness fees and mileage. (Doc. 43, at 4; Doc. 45, at 6; Doc. 46, at 4). As noted by Plaintiff's counsel, however, Rule 45 only provides for the payment of witness fees and mileage "if the subpoena requires that person's attendance . . . ." (Doc. 44, at 7 (quoting Fed. R. Civ. P. 45(b)(1))). None of the three subpoenas at issue here required DOC officials to attend and testify at a deposition, as each subpoena was limited in scope to the production of documents and other materials. (Doc. 37-1, at 1; Doc. 39-1, at 1; Doc. 41-1, at 1). Accordingly, counsel for the DOC's contention that Plaintiff failed to provide compensation for witness fees and mileage is not a valid objection to the particular subpoenas served on the DOC officials. *See generally Jackson v. Brinker*, No. IP 91-471-C, 1992 WL 404537, at *2 (S.D. Ind. Dec. 21, 1992) ("Because a subpoena *duces tecum* does not command the attendance of the subpoenaed person, Rule 45(b)(1) does not require a tender of attendance or mileage fees in order to effect good service of such a subpoena . . . .").

C. SANCTIONS

In addition to seeking an order compelling the DOC to produce the materials requested in the three subpoenas, Plaintiff also asks the Court to impose contempt sanctions on the subpoenaed DOC officials in the form of compensation for the time and resources Plaintiff expended in obtaining compliance with the subpoenas. (Doc. 38, at 6; Doc. 40, at 8-10; Doc. 42, at 8-9). At this time, the Court finds insufficient evidence to support contempt sanctions

---

the disclosure of Plaintiff's medical and mental health records in *any* context and at *any* time, without limiting the waiver of liability to this particular litigation.

against the subpoenaed DOC officials. Rule 45(g) provides, in relevant part, that "[t]he court . . . may hold in contempt a person who, having been served, fails *without adequate excuse* to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g) (emphasis added). Thus, sanctions are inappropriate where the subpoenaed nonparty has an adequate excuse for its noncompliance. *See* Fed. R. Civ. P. 45(g). The comment to the 2013 Amendment to Rule 45 goes on to state that "[i]n civil litigation, it would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena, and the order might not require all the compliance sought by the subpoena." Fed. R. Civ. P. 45 Advisory Committee Note (2013). Here, the Court finds that the DOC's reasonable desire to execute a confidentiality stipulation prior to turning over the requested materials based on security concerns—although not vitiating the DOC's need to comply with the subpoenas altogether—constitutes an adequate excuse for its lack of timely compliance. Accordingly, this Court will refrain from granting sanctions until the subpoenaed DOC officials have the opportunity to produce the requested materials after negotiating a reasonable confidentiality stipulation. The Court therefore denies Plaintiff's motions for contempt sanctions without prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiff's motions to compel production of subpoenaed documents and for contempt sanctions. (Doc. 37; Doc. 39; Doc. 41).

An appropriate Order follows.

Dated: March 31, 2017                                         *s/ Karoline Mehalchick*
                                                              **KAROLINE MEHALCHICK**
                                                              **United States Magistrate Judge**