## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYAN J. BLOOM, <br><br> Plaintiff, <br><br> v. <br><br> LISA HOLLIBAUGH, et al., <br><br> Defendants. | CIVIL ACTION NO. 1:16-CV-01075 <br><br> (MEHALCHICK, M.J.)[1] |

**MEMORANDUM**

Plaintiff Ryan Bloom commenced this action on June 6, 2016, asserting injuries sustained when he was an inmate housed at State Correctional Facilities (SCI) at Smithfield and Waymart. (Doc. 1). In his amended complaint, Bloom asserts civil rights, discrimination, and state law claims against the Pennsylvania Department of Corrections (DOC) and several DOC employees ("Corrections Defendants").[2] (Doc. 68). In February 2019, the Corrections Defendants moved for summary judgment, arguing, in part, that Bloom failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA) before filing federal suit. (Doc. 133, at 12-15). The Court denied the motion on that ground, and the Correction Defendants now move for reconsideration of that aspect of the Court's decision. (Doc. 167 (Memorandum); Doc. 168 (Order); Doc. 172 (Motion for Reconsideration)). Specifically, the

---

[1] In March 2018, pursuant to 28 U.S.C. § 636(c)(1), the parties consented to the undersigned's jurisdiction to adjudicate all pretrial and trial proceedings relating to this action. (Doc. 114).

[2] The Correction Defendants-movants include SCI-Smithfield Superintendent's Assistant Hollibaugh, former Deputy Superintendent Jay Whitesel, and Lieutenant Justin Lear; and SCI-Waymart Superintendent Wayne Gavin and Superintendent's Assistant Joseph J. Vinansky. (Doc. 173, at 1).

Corrections Defendants submit that the Court should reconsider its order because (1) it erred in concluding that Bloom was not a "prisoner" confined in a "correctional facility" under the PLRA when he filed his original complaint; and (2) new evidence exists, in the form of a declaration by Eileen Culkin, that was previously unavailable. The parties have fully briefed Bloom's motion, and it is now ripe for disposition. (Doc. 173; Doc. 175; Doc. 176; Doc. 178; Doc. 181).

For the following reasons, the Corrections Defendants' motion for reconsideration (Doc. 172) of the Court's partial denial of summary judgment on exhaustion grounds (Doc. 167; Doc. 168) is **DENIED**.

### I.  LEGAL STANDARDS

#### A.  MOTION FOR RECONSIDERATION

A motion for reconsideration is a device of limited utility which may only be used to correct manifest errors of law or fact or to present newly discovered precedent or evidence. *Harasco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). To prevail, a party seeking reconsideration must demonstrate one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

#### B.  ADMINISTRATIVE EXHAUSTION

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by *a prisoner confined in any* jail, prison, or *other correctional facility* until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The statute defines "prisoner" to mean "any person

incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The exhaustion requirement does not apply, however, to *former* prisoners who initiate lawsuits concerning prison conditions during the period of their incarceration or detention. *See, e.g., Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002).

## II. DISCUSSION

The issue squarely before the Court is whether the Correction Defendants established the absence of any genuine issue of material fact concerning whether Bloom was a prisoner confined to an "other correctional facility" under the PLRA – and therefore subject to the administrative exhaustion requirement – when he "brought" this action. The evidence proffered in connection with the Correction Defendants' summary judgment motion established that Bloom was paroled on in May 2016, filed his original complaint in June 2016, and was reincarcerated in September 2016. (Doc. 150-1, at 1; Doc. 155, at 10).[3] The Court, in deciding the Correction Officers' summary judgment motion, summarized the parties' contentions and resolved them, in part, as follows:

> The Corrections Defendants [] point to the declaration of Eileen Culkin, an employee of the Pennsylvania Board of Probation and Parole (the "[First] Culkin Declaration") . . . . The [First] Culkin Declaration states that [Bloom] was paroled . . . to the Cumberland County Parole Violator Center on May 26, 2016, [] transferred to the Columbia County Parole Violator Center on May 31, 2016[, and] . . . released to a Community Corrections Center on July 9, 2016. As such, the [First] Culkin Declaration concludes that [Bloom] was still "incarcerated" on June 6, 2016 because his freedom of movement was limited between May 26, 2016 and July 9, 2016. Nonetheless, the Corrections Defendants do not point to any evidence regarding the nature of such Parole

---

[3] The record of Bloom's cell history as of May 26, 2016, reflects his sentence status as "paroled" and a corresponding parole status of "no recommit action." (Doc. 150-1).

> Violator Centers, or the ways in which [Bloom]'s liberties were restrained upon being paroled there.
>
> The Corrections Defendants further contend that the PLRA's exhaustion requirement extends to individuals "who are incarcerated in drug treatment centers, halfway houses, and other similar facilities." In support of this argument, the Corrections Defendants cite to several cases from other courts, including *Ruggiero v. County of Orange*, 467 F.3d 170 (2d Cir. 2006), *Witze v. Femal*, 376 F.3d 744 (7th Cir. 2004), and *Nicholas v. McLaughlin*, No. 07-324, 2008 WL 509090 (W.D. Pa. Feb. 21, 2008). Notably, the Corrections Defendants do not direct the Court to any binding authority from within this Circuit that stands for the proposition that "other correctional facili[ties]," as contemplated under the PLRA, include Parole Violator Centers. Further, even if the Court accepted the Corrections Defendants' proposition—that the location Plaintiff was paroled to was akin to another prison facility—it is unclear how this would reconcile with the purposes of the PLRA as there is no evidence regarding whether such a facility provided available mechanisms under which inmates could exhaust their administrative remedies. *Cf. Warren v. King*, No. 14-CV-6249, 2016 WL 1720424, at *2 (E.D. Pa. Apr. 29, 2016) (denying summary judgment on exhaustion grounds when it was unclear from the record whether the grievance procedures at "a facility that provide[d] residential reentry treatment services and house[d] Technical Parole Violators" were available to plaintiff, a former resident of this facility who did not have an opportunity to file a grievance pursuant to its existing administrative exhaustion mechanisms). Thus, considering the dearth of binding authority from within this Circuit, as well as the evidence submitted by the Parties, the Court finds that the Corrections Defendants have not shown that [Bloom] was incarcerated for the purposes of the PLRA on the date he filed this action.
>
> Accordingly, the Court finds that the Corrections Defendants are not entitled to summary judgment as to [Bloom]'s Excessive Use of Force Claims (Count V) and ADA Claims (Counts XI and XII) on exhaustion grounds under the PLRA.

(Doc. 167, at 15-17 (internal citations and footnotes omitted)).

In their instant motion for reconsideration, the Corrections Defendants submit that they are entitled to reconsideration because (1) the Court erred in concluding that they failed to establish that Bloom was a "prisoner" confined in a "correctional facility" under the PLRA when he filed his original complaint; and (2) there exists new evidence, in the form of a supplemental declaration by Eileen Culkin ("Second Culkin Declaration"). Bloom argues that the Court committed no clear error of law in denying the Corrections Defendants' motion

on administrative exhaustion grounds. He also submits that the Second Culkin Declaration does not constitute new evidence that would warrant reconsideration, particularly given the holding in *Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019), that the plaintiff's status as a prisoner or non-prisoner under the PLRA was to be determined by reference to the date of filing of an amended complaint that also qualified as a supplemental complaint under Rule 15 of the Federal Rules of Civil Procedure.[4] (Doc. 175, at 3).

A. CLEAR ERROR

The Corrections Defendants submit that the Court (1) improperly overlooked the First Culkin Declaration as support for their position; (2) improperly discounted case law from other jurisdictions on the issue whether the PVC is a correctional facility under the PLRA, i.e., *Witze*, 376 F.3d 744, *Ruggiero*, 467 F.3d 170, and *Nicholas*, 2008 WL 509090; (3) erroneously relied on *Warren*, 2016 WL 1720424, as support for its rationale and conclusion; and (4) "add[ed] a requirement that does not appear in the [PLRA]: that the correctional facility where the plaintiff resides at the filing of the Complaint had [its] own grievance system." (Doc. 173, at 4-8).

The Court addressed these arguments in its initial Memorandum Opinion and finds no clear errors in its holdings. The plaintiff in *Witze* filed his complaint while housed in a correctional facility and the Seventh Circuit there addressed the discrete issue of whether

---

[4] Although Bloom filed an amended complaint in June 2017, Third Circuit precedent at the time explicitly held that "a plaintiff's status as a prisoner for purposes of the PLRA is judged as of the time he files his original complaint," and neither party argued that Bloom's status as a prisoner (or non-prisoner) should be determined by reference to the amended complaint's filing date. *See Defreitas v. Montgomery County Correctional Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) (emphasis added). The parties' original arguments for and against summary judgment centered on the filing date of Bloom's original complaint and whether he was at that time a prisoner as defined in the PLRA.

Witze was confined, for purposes of the PCRA, in drug treatment facilities when his alleged constitutional violations arose. *Witze*, 376 F.3d at 748. In *Ruggiero*, the Second Circuit applied *Witze* to hold that a drug treatment facility is an "other correctional facility" under the PCRA, but the decision does not reflect whether either party raised – or the court considered – the issue of whether grievance procedures were available at the facility. 467 F.3d at 175. The same is true of *Nicholas,* where the court held that a parolee who filed PCRA complaint while at a drug treatment facility was not exempt from the exhaustion requirement but did not discuss whether the plaintiff-parolee, who complained of violations that arose while he was housed at a State Correctional Institution, could have grieved complaints at the treatment facility. 2008 WL 509090, at *2. Moreover, as the Corrections Defendants note, the Court is not bound by the reasoning in these cases, as they are only persuasive, not controlling. (Doc. 173, at 6 (citing *Durkin v. Wabash Nat.*, No. CIV.A. 10-2013, 2013 WL 5466930, at *3 (D.N.J. Sept. 30, 2013) ("In the absence of controlling Third Circuit precedent, there can be no error in examining the persuasive authority of other jurisdictions."))).[5]

While the cases cited by the Corrections Defendants do suggest that certain facilities may qualify as "other correctional facility[ies]" under the PCRA (perhaps even ones that

---

[5] *See also Magni v. Times-Shamrock Commc'ns*, No. 3:15-CV-1177, 2016 WL 1060278, at *3 (M.D. Pa. Mar. 11, 2016) ("[T]he conclusions of the Third Circuit's sister circuits are persuasive, rather than controlling, authority."). Nor are the additional cases cited by the Corrections Defendants, raised for the first time in their instant motion, controlling (or even persuasive) on the issue whether the Columbia County PVC is an "other correctional facility" under the PLRA. (*See* Doc. 173, at 7-8 (citing *Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 994 (8th Cir. 2003) (juvenile detention center "other correctional facility"); *Milledge v. McCall*, 43 F. App'x 196, 198 (10th Cir. 2002) (private correctional facility that "provides services on behalf of the State of Colorado and also, at least in the case of Mr. Milledge, on behalf of the State of Wyoming"))). In neither case were the courts faced with a facility where no grievance procedures existed.

house parolees), the Court is not persuaded by the argument that a complete absence of grievance procedures is irrelevant to the determination of what constitutes a correctional facility under the PCRA.[6] None of the cases relied upon by Defendants addressed the argument that a facility is not an "other correctional facility" under the PCRA if no grievance procedures exist. The Corrections Defendants submit that the PCRA exhaustion analysis begins with determining whether plaintiff brought the action when confined as a prisoner under the PCRA, and only then does the issue of available grievance procedures arise. A lack of available grievance procedures may excuse exhaustion; it follows that a complete absence of a grievance procedure would excuse exhaustion.

As such, the Corrections Defendants' motion for reconsideration on the grounds that the Court clearly erred in its analysis is denied.

B. NEW EVIDENCE

Next, the Corrections Defendants submit that they should be permitted to supplement the record to include the Second Culkin Declaration. In the Second Culkin Declaration, Culkin asserts, in relevant part, as follows:

> The Columbia County PVC was located inside the Columbia County Jail in Bloomsburg. As a parolee in the Columbia County PVC, Bloom's movements would have been very limited. He would not have been allowed to leave the facility, unless he was released or on a writ. He could leave the block where he was assigned for work (if he had a prison job) or eat or go to medical.
>
> (Doc. 172, at 7).

This information is not new evidence warranting reconsideration. "'[N]ew evidence,' for reconsideration purposes, does not refer to evidence that a party obtains or submits to the

---

[6] The Second Culkin Declaration also makes no mention of available grievance procedures at the PVC.

court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010). The very location of the PVC and information concerning the limitations imposed therein were not unavailable when the Corrections Defendants moved for summary judgment. Further, nothing in the Second Culkin Declaration speaks to the grievance procedures (or lack thereof) available at the PVC. As such, the Corrections Defendant motion for reconsideration on the grounds of new evidence is denied.

### III. CONCLUSION

For the reasons stated herein, the Corrections Defendants' motion for reconsideration is **DENIED**.[7]

An appropriate Order follows.

                                                     **BY THE COURT:**

**Dated: June 15, 2020**                                      *s/ Karoline Mehalchick*
                                                         **KAROLINE MEHALCHICK**
                                                         **United States Magistrate Judge**

---

[7] Finally, because the Corrections Defendants have not provided grounds warranting reconsideration of their summary judgment motion, the Court does not reach Bloom's argument that the Second Culkin Declaration is irrelevant given the holding in *Garrett*, 938 F.3d at 84.